# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY V. KELLY,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>GINA RAIMONDO, Secretary of United States Department of Commerce,<br><br>　　　　　*Defendant*. | Civil Action No. 20-3203 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy V. Kelly, proceeding *pro se*, brings this action under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, as well as several other federal laws, against the Secretary of Commerce ("the Department").[1]  He asserts a host of claims related to his employment at and termination from the National Telecommunications Information Administration ("NTIA"), a component of the Department.  Dkt. 9 (Am. Compl.).  The Department moves to dismiss most, but not all, of these claims under Federal Rule of Civil Procedure 12(b)(6).  Dkt. 15 at 1. According to the Department, Kelly failed to assert certain claims administratively and abandoned others during the administrative process.  *Id.* at 1.

---

[1] Kelly's initial complaint named as Defendants not only the Secretary of Commerce, but also two of Kelly's supervisors, Laura Dodson and Douglas Kinkoph.  Dkt. 1 at 2 (Compl.).  His amended complaint, however, names only the Secretary.  Dkt. 9 at 1 (Am. Compl.).  To the extent that Kelly still asserts claims against Dodson and Kinkoph, those claims are hereby **DISMISSED**.  "Under the Rehabilitation Act . . . only the heads of federal agencies in their official capacity may be sued, not their individual employees."  *Williams v. Brennan*, 285 F. Supp. 3d 1, 7 (D.D.C. 2017) (internal quotation  marks omitted).

For the following reasons, the Court will **GRANT** the Department's motion in part and **DENY** it in part.

## I.  BACKGROUND

For purposes of resolving the Department's motion, the Court "assume[s] the truth of all material factual allegations in the complaint" and "construe[s] the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).  In addition, because Kelly is proceeding *pro se*, the Court holds his pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  And for that same reason, the Court treats the attachments Kelly submitted along with his complaint as part of the complaint. *See Crawford v. Duke*, 867 F.3d 103, 108 (D.C. Cir. 2017).  Kelly's complaint in this action is light on context, so the following facts are drawn in significant part from his attachments, in particular an administrative complaint he appears to have filed with the Equal Employment Opportunity Commission ("EEOC"), Dkt. 9 at 14–21 (EEOC Compl.), and an appellate decision of the EEOC's Office of Federal Operations ("OFO"), *id.* at 23–29 ("OFO Decision").

### A.    Factual Background

Kelly is a disabled veteran. *Id.* at 16 (EEOC Compl. ¶ 16).  He suffers from hearing loss with tinnitus and spinal abnormalities. *Id.* at 16–17 (EEOC Compl. ¶¶ 19, 22).  These disabilities impair his ability to communicate in certain respects and substantially limit his mobility, but he is able to overcome them in the workplace with the aid of accommodations, including communications devices and specialized orthopedic equipment. *Id.* at 17 (EEOC Compl. ¶¶ 20–

24).  In 2010, Kelly began working at NTIA as a Communications Program Specialist.  *Id.* at 16 (EEOC Compl. ¶ 13).

According to the complaint, Kelly's supervisors engaged in series of discriminatory actions against him beginning in 2014 and culminating in his removal in 2017.  *Id.* at 4–5 (Am. Compl.).  Kelly alleges that in September 2014 and without consulting him first, the Department temporarily cancelled his access to Call Bridge, "an audio, video, and conference system" service that previously had been provided to him as a reasonable accommodation related to his hearing loss.  *Id.* at 27 (OFO Decision at 5 n.2); *see also id.* at 4 (Am. Compl.); *id.* at 19 (EEOC Compl. ¶ 39).  Several months later, Kelly's iPhone, which had also been provided to him as a reasonable accommodation, broke down, but the Department declined to replace it, instead directing Kelly to "try to fix" it with the assistance of the NTIA help desk.  *Id.* at 4–5 (Am. Compl.).  And in May 2016 the Department authorized Kelly to receive a lightweight laptop as an accommodation for his spinal disabilities, but several weeks later his supervisor cancelled that accommodation.  *Id.* at 4–5 (Am. Compl.); *id.* at 19 (EEOC Compl. ¶ 42).

Kelly also alleges that the Department removed or denied several reasonable accommodations related to his teleworking arrangement.  He avers that in October 2015 the Department began to cut back in some way on his ability to telework full-time, an accommodation provided to him in 2014.  *Id.* at 4–5 (Am. Compl.).  According to Kelly, his 2014 telework policy was contained in a memorandum, and the Department never updated this memorandum for 2016.  *Id.* at 4–5. Although Kelly does not elaborate on the consequences of this inaction and the extent which his ability to telework was reduced in practice, it appears that by mid-2016 he was working in person, at least some of the time.  *See id.* at 4–5 (Am. Compl.); *id.* at 19 (EEOC Compl. ¶ 41).  After he began commuting, Kelly requested a 6:00 a.m. to 2:30

p.m. in-person shift, so that he could avoid rush-hour traffic, which poses "potential hazards for exacerbating his symptoms." *Id.* at 17, 19 (EEOC Compl. ¶ 23, 41); *id.* at 4–5 (Am. Compl.). But the Department denied this request. *Id.* at 19 (EEOC Compl. ¶ 41); *Id.* at 5 (Am. Compl.).

Separate from these reasonable accommodation incidents, Kelly describes numerous instances in which his supervisors allegedly cited him with false charges for being away without leave ("AWOL"). He was first marked as AWOL on January 27, 2016, but he maintains that he was teleworking that day and was not absent. *See id.* at 4 (Am. Compl.); *see also id.* at 19 (EEOC Compl. ¶ 40). He received another AWOL charge on December 9, 2016 for being away for approximately 40 hours on what he describes as approved sick-leave. *Id.* at 4. And he was issued a further charge for his absence on March 17, 2017, this time while he was taking unpaid leave to which he was allegedly entitled as a disabled veteran. *Id.* at 4; *id.* at 19 (EEOC Compl. ¶ 44). According to Kelly, despite his justifications for these alleged absences, his supervisors failed to "engage [him] in dialogue" prior to issuing charges and refused to discuss the charges with him after the fact. *Id.* at 5 (Am. Compl.); *id.* at 19 (EEOC Compl. ¶ 44).

The discriminatory treatment Kelly received extended to his opportunities for career development and advancement. In particular, Kelly asserts that he was wrongfully denied an opportunity to compete for a promotion. *Id.* at 4 (Am. Compl.). The details of what happened are sparse, but it appears that a "GS-15 Supervisory Tenured position" became available in 2015. *Id.* For reasons that are hard to discern, Kelly, a career-status employee at the GS-14 level, was asked to withdraw his name from consideration for the role. *Id.* at 4. (Am. Compl.); *id.* at 16 (EEOC Compl. ¶ 13). Several months later, a "term conditional" employee was promoted instead. *Id.* at 4. (emphasis omitted). Kelly does not explain this charge in further detail, but the Court infers Kelly's position to be that he was asked to withdraw his application for a

discriminatory or otherwise wrongful reason.  Around this same time, Kelly was also issued a "letter of caution" about his performance after a call in which his supervisor was supposed to review his 2016 performance plan with him.  *Id.* at 4 (Am. Compl.); *see id.* at 19 (EEOC Compl. ¶ 45).

On February 27, 2017, Kelly's supervisor issued a proposal to remove him from his employment with NTIA, citing 137 specifications, all of which Kelly maintains are "false."  *Id.* at 24 (OFO Decision at 2); *id.* at 4–5 (Am. Compl.).  On April 14 he was removed.  *Id.* at 4. Kelly contends he was terminated in retaliation for a December 2016 complaint he filed with the EEOC, although he does not provide the details of this complaint or further explain the series of events.  *Id.* at 5.

**B.  Procedural History**

The procedural background of this dispute is the only matter truly at issue today.  It is complicated and, despite briefing and voluminous evidentiary submission from both parties, surprisingly mysterious.  The following can be gleaned from Kelly's complaint and the materials attached thereto: On December 23, 2016 Kelly filed an administrative complaint with the EEOC and requested a hearing.  *Id.* at 10 (referring to "Post-Investigation Processing of Complaint: 61-2016-00089").  It appears that this EEOC complaint is the same one that is attached to Kelly's complaint in this action.  *Id.* at 14–21 (EEOC Compl.) (Agency No. 61-2016-00089).  The Court assumes that it is, and it contains a litany of allegations, many of which mirror those alleged in Kelly's civil complaint and described above, but several of which do not.  *Compare id.* at 4–5 (Am. Compl.), *with id.* at 14–21 (EEOC Compl.).  Kelly never says what happened to this complaint after he filed it.

On September 24, 2020, the OFO issued a decision in a case involving Kelly.  Dkt. 9 at 23 (OFO Decision at 1).  But this decision does not correspond to the December 23, 2016 complaint.  It instead appears to relate to a June 8, 2017 administrative complaint Kelly filed contesting his termination and asserting various discrimination claims, five of which the Department accepted for investigation and which in the main overlap with claims contained in Kelly's EEOC complaint.  *Id.* at 24–25.  As explained in the OFO opinion, after Kelly filed his June 8 administrative complaint with the Department, the Department bifurcated his removal claim from his other discrimination claims and instructed Kelly that he could request either an EEOC hearing or a final agency decision with respect to his discrimination claims.  *Id.* at 25. The Department further informed Kelly that he had the right to a final agency decision on his removal, with an appeal to the Merit Systems Protection Board ("MSPB").  *Id.*

Kelly requested a final agency decision on his removal, the Department affirmed its action, and Kelly appealed that decision to the MSPB.  *Id.*  Before the MSPB, Kelly "raised affirmative defenses of disability-based disparate treatment, denial of reasonable accommodation, and reprisal."  *Id.*  The MSPB affirmed Kelly's removal and rejected these "defenses," holding, among other things, that the Department had not denied him a reasonable accommodation.  *Id.*  It appears that Kelly raised arguments related to his telework policy in this appeal, because the MSPB's decision explains that Kelly "had been granted a full[-]time telework reasonable accommodation in October 2014, which was in place through April of 2015 and appears to have been unofficially extended for another year" and that Kelly "thereafter

'withdrew' a follow-up February 2016 reasonable accommodation request, and instead sought to transition back to a traditional partial telework schedule." Dkt. 15-1 at 618–19 (Def.'s Ex. 6).[2]

Kelly petitioned the OFO for review of the MSPB's decision, and the OFO concurred "with the MSPB's decision that [Kelly] did not establish that [the Commerce Department] discriminated against him as alleged." Dkt. 9 at 23 (OFO Decision at 1). Among other things, the OFO rejected Kelly's contention that the Department "failed to reasonably accommodate his hearing disability." *Id.* at 26 (OFO Decision at 4). In particular, the OFO concluded that Kelly was, in fact, provided with the "reasonable accommodations" that he requested, "including telework, schedule changes, ergonomic equipment, and multiple computers." *Id.* 26–27 (OFO Decision at 4–5). With respect to "Call Bridge," the OFO explained that, although the Department did cancel Call Bridge accounts that were not being used, it "reactivated" the account that Kelly used when he informed the Department "of his need." *Id.* at 27 (OFO Decision at 5). "Likewise," the OFO concluded, "the [Department] replaced [Kelly's] cell phone once it stopped working." *Id.*

With respect to Kelly's disparate treatment claims, the OFO once again agreed with the MSPB's disposition. Assuming without deciding that Kelly had established a prima facie case, the OFO concluded that the Department had proffered "legitimate, nondiscriminatory reasons for [Kelly's] removal." *Id.* In particular, the Department "established that [Kelly] exhibited improper conduct in the workplace," involving his "failure to follow instructions," absences without leave, and "failure to follow leave procedures." *Id.* Kelly, for his part, failed to show that the Department's stated reasons for his removal were pretextual. *Id.* at 27–28 (OFO

---

[2] Although the Court relies primarily on Kelly's complaint and its attachments, it takes judicial notice of the MSPB decision (submitted as an exhibit by the Department) as it is referenced in the OFO decision.

Decision at 5–6).  The OFO, accordingly, "agree[d] with the MSPB's ultimate finding that [Kelly] did not establish that this removal was based on disability or age discrimination or in reprisal for prior protected activity."  *Id.* at 28 (OFO Decision at 6).

The OFO decision was a final decision of the EEOC, with "no further right of administrative appeal."  *Id.* at 28 (OFO Decision at 6).  Kelly received a "Notice of Right to Sue letter" on September 30, 2020, *id.* at 6 (Am. Compl.), and filed this lawsuit a month later, Dkt. 1. He filed his amended his complaint, which is the operative complaint for present purposes, on June 3, 2021.  Dkt. 9 (Am. Compl.).  That complaint asserts claims for discrimination, failure to provide reasonable accommodations, and retaliation in violation of the Rehabilitation Act, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*, the Vietnam Era Veterans' Readjustment Assistance Act ("VEVRAA"), 38 U.S.C. § 4212 *et seq.*, several civil service regulations, 5 C.F.R. § 315.201; 5 C.F.R. § 316.301–304, and the Department of Commerce's reasonable accommodation policy, DAO 215-10.  *Id.* at 3 (Am. Compl.).  Liberally construed, the complaint asserts no less than 23 counts in total, organized in table form below:

| | **Claim** |
|---|---|
| **A.** | 09/18/14: Agency cancels Plaintiff's [reasonable accommodation] RA for Call  Bridge Service continuing 19-months (hearing-loss) |
| **B.** | 12/09/14: Agency denies replacement of Plaintiff's RA for iPhone4 when it dies (hearing loss). |
| **C.** | 01/04/14: Agency directs Plaintiff "try to fix" unsafe iPhone4 continuing 15-months (hearing-loss). |
| **D.** | 08/14/15: Agency orders Plaintiff withdraw from competition for GS-15 Supervisory Tenured position. |
| **E.** | 10/01/15: Agency promotes GS-15 TERM CONDITIONAL employee to above Tenured position. |
| **F.** | 10/06/15: Agency Supervisor states she will meet with [reasonable accommodation coordinator] RAC to update Plaintiff's RA-2014 Memorandum to permit full-time telework. Updated RA-2016-Memorandum never done. |
| **G.** | 11/24/15: Agency Supervisor on phone call to review FY-16 Performance Plan instead issues a "Letter of Caution" pointing to Plaintiff's immediate termination removal. |
| **H.** | 01/27/16: False AWOL charges during Federal Shutdown while still under RA-2014 Memorandum. |

| I. | 04/18/16: First of several Supervisor denials to Plaintiff work 1st shift (6am-230pm) for safe commuting. |
|---|---|
| J. | 05/19/16: Laptop (<=5lbs) Authorized by Office of the Secretary. Ordered on 5/24/2016. Unilaterally cancelled by Agency Supervisor on or about 6/6/2016. |
| K. | 12/09/16: False AWOL charges made after sick-leave approved for 48 of 56 hours for 11/28-12/6/16. |
| L. | 02/27/17: Plaintiff filed with EEOC on 12/23/2016, in retaliation 7-weeks later, Agency Supervisor issued a Proposal to Remove Plaintiff. |
| M. | 03/17 /17: False AWOL charge based on Agency Supervisor's error RE: disabled-veteran LWOP use |
| N. | 04/14/17: Plaintiff was terminated via Email while on approved sick leave. |
| O. | Agency Supervisor ignored all of Plaintiff's approved leave (including 818 hours of sick leave following a MVA in 2015) when retaliating against Plaintiff with her  Proposal to Remove on (2/27/2017). Many of the above leave hours, almost 5 work months, correspond and invalidate many of the MISCONDUCT charge dates in Agency's Proposal to Remove. The Agency's Letter of Termination of 4/14/2017 draws from the above misconception of all the false charges made. |
| P. | Did Agency Supervisor and Manager err by not engaging Plaintiff in dialog prior to issuing AWOL charges on: 2/5/2016 (20 hours); 12/9/2016 (40 hours) and on 3/23/2017 (8 hours)? |
| Q. | Did Agency err by not engaging Plaintiff (9/18/2014) prior to cancelling his RA for Call Bridge Service? |
| R. | Did Agency err by not replacing Plaintiff's dead, unsafe iPhone 4 when first reported (12/14/2014) and then requiring him to work with NTIA Help Desk to "repair" the iPhone 4? (i.e. the battery was dead.). |
| S. | Did Agency err, asking Plaintiff withdraw from competition for position now held Agency Supervisor? |
| T. | Did Agency Supervisor err by not ever providing an RA 2016 Memorandum for Plaintiff? |
| U. | The Agency failed to ever provide the RA for a working lightweight laptop ( <=5lbs) after being authorized by Office of the Secretary on 5/19/2021.Supervisor cancelled RA without informing Plaintiff. |
| V. | The Agency discriminated against Plaintiff requiring medical document to approve 1st shift (6-230pm) to support safe commuting. At times when OS encouraged liberal commuting schedules (SAFE TRAC). |
| W. | Upon receiving "right to sue" from Agency, Plaintiff filed his case with EEOC on 12/23/2016. After learning of this, Agency Supervisor retaliated with a Proposal to Remove including over 150 false specification charges. |

The Department moves to dismiss nineteen of Kelly's twenty-three claims: claims A–K, M, and P–V. Dkt. 15 at 18–19. In its motion, the Department describes Kelly's employment with NTIA and recounts numerous administrative actions in which Kelly was involved during his tenure. *Id.* at 8–12. Curiously, the Department makes no mention of the December 23, 2016 EEOC complaint on which Kelly focuses, nor does it acknowledge the EEOC action

corresponding to the EEOC complaint Kelly attached to his civil complaint, EEOC No. 570-2017-445X.  Dkt. 9 at 14 (EEOC Compl.).

In any event, based on its understanding of the administrative procedural history, the Department makes two related arguments for why most of Kelly's claims should be dismissed. It first submits that Kelly abandoned twelve of his claims during a series of administrative proceedings that took place in 2016 and 2017.  Dkt. 15 at 18–19.  In the Department's version of events, Kelly raised these same claims in the preliminary counseling phase of the EEOC administrative process but failed ever to allege them in a formal complaint.  *Id.* at 18. Second, the Department contends that seven of Kelly's other claims "were never brought to the Agency EEO Office" and were instead "first alleged in Plaintiff's June 3, 2021 Amended Complaint filed in this case."  *Id.* at 19.  It argues in the alternative that the Court should treat five of the same seven claims as abandoned.  *Id.*  All nineteen of these claims (twelve abandoned and seven otherwise unexhausted) must dismissed, says the Department, because before bringing Rehabilitation Act claims in district court, a plaintiff must exhaust them at the administrative level.  *Id.* at 17–19.

Kelly filed his initial opposition on November 5, 2021, Dkt. 16, and submitted a supplemental memorandum on December 3, 2021, Dkt. 18.  His initial opposition is scant, and although it discusses certain aspects of his administrative proceedings, it is largely unresponsive to the Department's assertions.  Dkt. 16 at 1–4.  His supplemental memorandum is more substantial, but it is devoted almost entirely to the merits of his claims.  Dkt. 18 at 1–14.  It does not address abandonment or administrative exhaustion apart from passing and conclusory assertions that Kelly never intended to abandon any of his claims and was not informed by the Department that he had done so.  *Id.* at 4, 14.

To date, the parties have largely talked past each other on the issue of administrative exhaustion: Kelly has submitted to the Court an undated EEOC complaint in action No. 570-2017-445X, which asserts claims that largely but do not entirely overlap with the claims he brings in this Court. Dkt. 9 at 14–21 (EEOC Compl.). He has also submitted a 2020 OFO decision arising out of a separate, June 8, 2017 EEO complaint that he does not otherwise mention. *Id.* at 23–29. The Department, on the other hand, describes an extensive series of agency and EEO proceedings in 2015, 2016, and 2017 to which Kelly makes no identifiable reference, Dkt. 15 at 8–12, and it attaches to its motion hundreds of pages of records from these proceedings, Dkt. 15-1. Unlike Kelly, the Department addresses the June 8, 2017 complaint that culminated in the OFO's September 24, 2020 decision. Dkt. 15 at 10–12. But the Department never acknowledges or addresses Kelly's alleged December 23, 2016 complaint or EEOC No. 570-2017-445X.

Before turning to the legal issues raised by the Department's motion, the Court offers a word about terminology. Although the Department treats abandonment and non-exhaustion separately, these concepts are two flavors of what is essentially the same non-exhaustion argument. *See Katz v. Winter*, 303 Fed. App'x 125, 126 (3d Cir. 2008) (explaining that a plaintiff's "voluntar[y] abandon[ment]" of administrative claims amounts to a failure to exhaust). If a plaintiff abandons her claims during the administrative process, she necessarily fails to exhaust them. *See Williams v. Brennan*, 320 F. Supp. 3d 122, 129–31 (D.D.C. 2018) (treating a claim in a complaint that a plaintiff "filed [with the EEOC], and then withdrew" as unexhausted). Everything the Court says about administrative exhaustion in this opinion therefore applies equally to abandonment.

## II.  ANALYSIS

**A.**    *Sua Sponte* **Dismissals**

The Department assumed in its brief that Kelly's complaint asserted claims only under the Rehabilitation Act.  Dkt. 15 at 3.  That is understandable, because Kelly's claims do appear largely to arise under the Rehabilitation Act.  But it is not correct.  Kelly's complaint also asserts (or attempts to assert) claims under the VEVRRA, 5 C.F.R. § 315.201, 5 C.F.R. § 316.301–304, and the Department's reasonable accommodation policy, DAO 215-10.  Dkt. 9 at 3 (Am. Compl.).  The Department's oversight makes little practical difference, however, because the Court now *sua sponte* dismisses all of Kelly's claims, except those that he brings under the Rehabilitation Act.

Kelly's ADA claims fail as a matter of law, because the "ADA does not apply to employees of the federal government."  *Ahmed v. Napolitano*, 825 F. Supp. 2d 112, 115 (D.D.C. 2011).  Under 42 U.S.C. § 12111(5)(B)(i), "the United States" is excluded from the ADA's definition of "employer."  Here, Kelly is suing the United States through the Secretary of Commerce.  The Rehabilitation Act, not the ADA, is the proper vehicle for disability discrimination claims against the federal government like Kelly's.  *See* 29 U.S.C. § 791; *see also Woodruff v. Peters*, 482 F.3d 521, 526–29 (D.C. Cir. 2007).

Kelly's other non-Rehabilitation Act claims also fail as a matter of law, although for different reasons.  Under Federal Rule of Civil Procedure 8(a)(2), Kelly's complaint must contain "a short and plain statement" of his claim "showing that [he] is entitled to relief."  Even assuming (for now) that Kelly has alleged enough to assert a claim (or claims) under the Rehabilitation Act, he has not done so with respect to VEVRAA or the various regulations he lists at the outset of his complaint.  The Court cannot discern from Kelly's pleading any factual

and legal basis for granting relief under these other laws.  Similarly, Kelly fails to state a claim under the Department's reasonable accommodation policy, DAO 215-10, because that policy does not appear to provide an independent basis for relief.  The Court has construed Kelly's pleadings generously because he is a *pro se* litigant, but "even pro se litigants . . . must comply with the Federal Rules of Civil Procedure."  *Medina v. California*, No. 22-cv-0341, 2022 WL 715180, at *1 (D.D.C. Mar. 9, 2022).

The Court will, accordingly, dismiss all of Kelly's claims, except those that he brings under the Rehabilitation Act.

In the interest of efficiency, the Court will also consolidate several of Kelly's claims that are redundant with other claims.  It is not clear from the complaint which of Kelly's statements are meant to be independent claims and which are not.  For ease of comprehension, the Court has followed the Department's convention and treated each statement as its own claim.  Dkt. 15 at 13–15.  The Court observes, however, that claims Q, R, S, T, U, and V are almost entirely redundant with claims A, B, D, F, J, and I, respectively, and that B and C are redundant of each other.  The explanation for this duplication may be that Kelly never actually intended for all of these statements to be treated as separate counts.  Regardless, going forward in this litigation the Court will do the following: (1) treat claims A and Q as a single claim; (2) treat claims B, C, and R as a single claim; (3) treat claims D and S as a single claim; (4) treat claims F and T as a single claim; (5) treat claims I and V as a single claim; and (6) treat claims J and U as a single claim.  If Kelly was intending to assert any of these consolidated claims separately, those claims are dismissed as redundant.  The Court has provided a revised chart of claims as an appendix to this opinion so that these changes are clear to the parties.

**B.      Failure to Exhaust**

The Department moves to dismiss most of Kelly's Rehabilitation Act claims for failure to exhaust, pursuant to Rule 12(b)(6).  Dkt. 15.  According to the Department, failure to exhaust is "an affirmative defense," which the defendant "bears the burden of pleading and proving."  *Id.* at 17–18.  This is true for claims arising under most anti-discrimination statutes, where exhaustion does not determine the Court's subject-matter jurisdiction.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).  But the Rehabilitation Act is different.  In some circumstances, a Rehabilitation Act plaintiff's failure to exhaust is a jurisdictional bar to her civil suit.  *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006).  In others, the exhaustion requirement is non-jurisdictional.  *Doak v. Johnson*, 798 F.3d 1096, 1103–05 (D.C. Cir. 2015).  This distinction is of considerable consequence to the parties.  "To the extent the requirement is jurisdictional, the plaintiff bears the burden of alleging facts sufficient to establish that he or she exhausted administrative remedies and bears the ultimate burden of proof."  *Williams*, 320 F. Supp. 3d at 127 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006); *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984)).  "In contrast, to the extent it is non-jurisdictional, the failure to exhaust constitutes an affirmative defense, and thus the defendant must raise the defense and bears the burden of proof."  *Id.* (citing *Bowden*, 106 F.3d at 437).

Two D.C. Circuit decisions mark the boundary between jurisdictional and non-jurisdictional exhaustion under the Rehabilitation Act.  In *Spinelli v. Goss*, the court of appeals held that a plaintiff's complete failure to file an administrative complaint concerning a Rehabilitation Act claim deprived the court of jurisdiction over the claim.  446 F.3d at 162.  After *Spinelli* was decided, several district court decisions held "in categorical terms, that administrative exhaustion under the Rehabilitation Act is a jurisdictional requirement."

*Williams*, 320 F. Supp. 3d at 127 (collecting cases).  But a decade later, in *Doak v. Johnson*, the court of appeals clarified that *Spinelli* "does not reach that far."  798 F.3d at 1103.  *Doak* explained that although *Spinelli*'s holding was jurisdictional, the *Spinelli* decision "did not attach irremediable jurisdictional consequence to every procedural misstep that happens during exhaustion of the administrative process."  *Id.* at 1104.  Instead, "all *Spinelli* held" was that district courts lack jurisdiction over Rehabilitation Act claims where a plaintiff has failed entirely to "file an administrative complaint or to obtain any administrative decision at all."  *Id.* at 1103–04; *id.* at 1104 ("Because the plaintiff in *Spinelli* never filed an administrative complaint, there was never any final administrative disposition of a complaint, or any reviewable final administrative action at all.").  In *Doak* itself the plaintiff had filed an administrative claim but had failed to initiate the EEO counseling process within 45 days, a requirement under EEOC regulations.  *Id.* at 1103.  The court of appeals concluded that, unlike the "wholesale failure to file an administrative complaint" in *Spinelli*, this timeliness oversight was not fatal to jurisdiction.  *Id.* at 1103–04.

In reaching this result, *Doak* distinguished between statutory and non-statutory exhaustion requirements.  The Rehabilitation Act contains a single statutory exhaustion requirement, which limits judicial review to employees "aggrieved by the final disposition" of their administrative "complaint" or "by the failure [of the agency] to take final action on such complaint."  29 U.S.C. § 794a(a)(1).  That language was critical to *Spinelli*'s holding: "Since there was no administrative complaint," the court explained, there could be no "final disposition" of a complaint.  446 F.3d at 162.  But as *Doak* pointed out, *Spinelli* did not address the impact of failing to follow any "non-statutory step[s]" that "preced[e] the formal agency exhaustion required by statute," such as timeliness obligations imposed by regulation.  *Doak*, 798 F.3d at

1104.  Confronting this latter circumstance, *Doak* held that *Spinelli*'s reasoning did not apply to non-statutory requirements, making clear that, unlike statutory requirements, non-statutory requirements (including those imposed pursuant to the governing EEOC regulations) do not circumscribe the subject-matter jurisdiction of the federal courts.

The relevant question for jurisdictional purposes, accordingly, is whether the plaintiff is aggrieved by the agency's final disposition of his complaint, notwithstanding any missteps he may have made along the way with respect to the relevant non-statutory procedural requirements.  In *Williams*, for example, this Court held that it lacked jurisdiction over a plaintiff's claims where she had "filed, and then withdrew, her complaint" before the agency, because her withdrawal of the complaint precluded the agency from a rendering a "final disposition of [the administrative] complaint."  320 F. Supp. 3d at 130 (quoting 29 U.S.C. § 794a(a)(1)).  The Court reached the same result in *McIver v. Mattis*, 318 F. Supp. 3d 245 (D.D.C. 2018), where the plaintiff had "filed a charge with the appropriate agency but did not provide notice of the particular claim later pursued in court."  *Id.* at 250.  The Court reasoned that "a failure to provide notice of a particular claim is no different—as far as that claim goes— than a wholesale failure to file."  *Id.* at 251.

Against this backdrop, the Court must do the following, mindful that administrative exhaustion demands a "claim-by-claim" analysis.  *Webster v. Del Toro*, 49 F.4th 562, 567 (D.C. Cir. 2022).  First, because Kelly bears the burden of showing that he has exhausted his administrative remedies in a manner sufficient to establish subject-matter jurisdiction, the Court must review his complaint and the documents incorporated therein to determine whether he has carried that burden with respect to each claim.  If Kelly has not done so with respect to a claim, the Court must dismiss the claim for lack of subject-matter jurisdiction.  Under this circuit's two-

tiered exhaustion framework, once Kelly demonstrates that he has exhausted a claim in a manner sufficient to establish jurisdiction, the exhaustion requirement shifts from a pleading requirement to an affirmative defense.  Correspondingly, the burden shifts from Kelly to the Department, and Kelly need not plead facts sufficient to establish non-jurisdictional exhaustion.  This means that a defendant arguing the affirmative defense of non-exhaustion at the motion-to-dismiss stage of the proceeding can prevail only if the plaintiff's "failure to exhaust is plain from the allegations of the complaint or the undisputed records of the administrative proceeding that are attached to or referred to in the complaint or that are subject to judicial notice."  *Yaich v. Walsh*, 21-cv-669, 2022 WL 3139028, at *3 (D.D.C. Aug. 5, 2022).  "Against this backdrop, the Court must determine whether [Kelly] has exhausted [his] administrative claims, whether any failure to exhaust is jurisdictional or non-jurisdictional, and what consequences follow."  *Williams*, 320 F. Supp. 3d at 128.

Applying this framework, the Court concludes that even construing Kelly's complaint and the documents it incorporates liberally, Kelly has failed to carry his burden of alleging facts sufficient to show that he satisfied the jurisdictional exhaustion requirement with respect to claims D (and thus also S), E, G, H, I (and thus also V), K, M, and P.  This is readily apparent with respect to claims D ("08/14/15: Agency orders Plaintiff withdraw from competition for GS-15 Supervisory Tenured position [sic].") and E ("10/01/15: Agency promotes GS-15 TERM CONDITIONAL employee to above Tenured position.").  Nothing in the materials Kelly has submitted refers (at least in discernible terms) to claims D and E, much less establishes that he filed a complaint asserting them and is aggrieved by a "final disposition" of that complaint or the agency's failure to act on it.  29 U.S.C. § 794a(a)(1).  The EEOC administrative complaint that Kelly incorporates into his complaint before this Court does not include these claims, and as

*McIver* explained, "a failure to provide notice of a particular claim is no different—as far as that claim goes—than a wholesale failure to file."  318 F. Supp. 3d at 251.

Although the EEOC administrative complaint that Kelly filed in this case includes allegations similar to those raised in claims G, H, I (and thus also V), K, M, and P, Kelly still did not exhaust these claims for purposes of this Court's jurisdiction.  Filing an administrative complaint is not enough, absent any showing or allegation that Kelly was "aggrieved by the final disposition" of that complaint, 29 U.S.C. § 794a(a)(1), and Kelly has made no such showing or allegation.  This result is consistent with *Doak*, despite *Doak*'s focus on the fact that the plaintiff in *Spinelli* had not filed a complaint at all.  *Doak* recognized that *Spinelli*, relying on the text of the Rehabilitation Act, held that "federal court 'jurisdiction depend[s] on the 'final disposition of [an administrative] complaint.'"  798 F.3d at 1103–04 (second alteration in original) (quoting *Spinelli*, 446 F.3d at 162).  *Doak* did not displace that holding, nor did it purport to limit *Spinelli* entirely to its facts—*i.e.*, only to circumstances in which no complaint has ever been filed. Absent any allegation that the Department rendered a final disposition or the incorporation of any document reflecting such a disposition, Kelly's complaint fails to clear the threshold hurdle for invoking this Court's jurisdiction with respect to these claims.

Claims A (and thus also Q) and B (and thus also C and R), in contrast, meet this requirement, because the OFO addressed claims similar to these in its final decision on Kelly's termination.  Claim A pertains to the Department's removal of Kelly's Call Bridge reasonable accommodation, Dkt. 9 at 4–5 (Am. Compl.), and, in its opinion, the OFO explained that although Kelly "maintained that he was denied an accommodation related to 'Call Bridge,' the record shows that the [Department] cancelled Call Bridge accounts that were not being used as a measure to save money," and that "[o]nce [Kelly] informed the [the Department] of his need for

Call Bridge, it was reactivated." *Id.* at 27 (OFO Decision at 5).  Claim B concerns the

Department's alleged failure to replace Kelly's cell phone, a contention the OFO rejected, noting

that "the Agency replaced Petitioner's cell phone once it stopped working." *Id.* at 4–5 (Am.

Compl.), 27 (OFO Decision at 5).  These references, which are incorporated into Kelly's

complaint in this action, are sufficient for present purposes.

Claims F (and thus also T) and J (and thus also U) also pass jurisdictional muster at this

initial point in the litigation.  The OFO's decision does not mention claims F and J specifically,

as it does claims A and B.  But the MSPB's decision does, as the Department forthrightly

acknowledges with respect to claim J.  Dkt. 15-1 at 618–19 (Def.'s Ex. 6) (discussing Kelly's

claims regarding denial of a computer and his telework policy); Dkt. 15 at 18 n.6 (stating that

Kelly's claims regarding a lightweight laptop accommodation "were . . . presented before the

MSPB as part of [Kelly's] affirmative defense related to reasonable accommodations").

Although the OFO opinion does not expressly pass on every aspect of the MSPB decision—and

does not mention these allegedly denied reasonable accommodations by name—it concurs in the

decision in full.  Dkt. 9 at 23, 28 (OFO Decision at 1, 6).  Accordingly, at least at this early stage,

the Court can infer that these claims resulted in a final agency disposition.

Complicating the exhaustion analysis is the fact that, in this case, Kelly asserted claims

A, B, F, and J as "affirmative defenses" in the MSPB proceeding, which the OFO then

considered when it reviewed the MSPB's decision.  Dkt. 9 at 25–27 (OFO Decision at 3–5).

That posture raises a host of difficult questions, which neither party addresses—or even

acknowledges—in its briefing.  Does a federal employee, for example, exhaust a failure to

accommodate claim when he raises the underlying issue as an "affirmative defense" to his

removal in an MSPB proceedings?  If so, how substantial must the failure to accommodate be,

and how closely connected to the adverse employment action that is the basis for MSPB jurisdiction?  How should a court, for instance, treat an alleged failure to accommodate that is raised in an MSPB proceeding, if that failure did not even arguably lead to the employee's removal?  And, even if the alleged failure to accommodate did not rise to the level of an affirmative defense to the employee's termination, is the exhaustion requirement satisfied if the MSPB nonetheless addresses the allegation, and OFO subsequently concurs in the MSPB's decision?  Without briefing from either side, and, in any event, on an incomplete administrative record, the Court is unable to decide these questions.  For the present, and drawing all inferences in Kelly's favor as it must, the Court concludes that Kelly has carried his burden of establishing that he received a final disposition of these claims and, accordingly, the complaint that contained them.[3]

This, then, leaves the question whether the Department has carried its burden of demonstrating that Kelly has nonetheless failed to comply with a non-statutory exhaustion requirement with respect to one or more of the claims that have cleared the threshold, jurisdictional hurdle.  Here, the Department only argues abandonment, Dkt. 15 at 18, and the Court is unpersuaded that it can resolve that question—or any related question—at this stage of the proceeding and on the record that is properly before the Court.  Because the affirmative

---

[3] As noted above, the OFO final decision considered only the removal component of the administrative complaint that Kelly filed on June 8, 2017, and not any stand-alone discrimination or retaliation claims.  Any such stand-alone claims alleged in that administrative complaint, proceeded through a separate process with the EEOC.  Dkt. 15-1 at 775–77 (Def.'s Ex. 12).  It appears from the Court's review of the record that the EEOC dismissed these claims without prejudice (and returned them to the Department to be held in abeyance) pending the resolution of the MSPB and OFO process related to Kelly's removal.  *Id.*  The Court cannot discern the current status of those claims—whether they remain in abeyance and, if not, what if any resolution has been reached.

defense question is complex, largely unbriefed, and record-dependent, the Court will deny the Department's motion with respect to the remaining claims without prejudice.

## C.     Next Steps

For the reasons provided above, the Court will dismiss the majority of Kelly's claims for lack of jurisdiction, leaving only claims A, B, F, J, L, N, O, and W (the latter four the Department has not moved to dismiss).  The Court's dismissal of these claims, however, whether under Rule 8 or for lack of subject-matter jurisdiction, is without prejudice.  *Havens v. Mabus*, 759 F.3d 91, 98 (D.C. Cir. 2014) ("A jurisdictional dismissal—which is *not* an adjudication on the merits under Rule 41(b)—is, then, a dismissal without prejudice.").  The Court will give Kelly forty-five days to file a second amended complaint.

Should Kelly file a second amended complaint, he must set forth—in detail—each step he went through in the administrative process with respect to each claim and allege specific facts demonstrating why he has exhausted his administrative remedies with respect to each of his claims.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Consistent with Federal Rule of Civil Procedure 8(a)(2), he must also allege facts sufficient to give rise a plausible inference that he is entitled to relief under the specific statute he invokes.

Assuming that Kelly files a second amended complaint, the Department is of course free to move to dismiss that complaint, in whole or in part, on any grounds it deems appropriate.  As discussed, if the Department asserts that Kelly has failed to exhaust administrative remedies in a manner that goes to the Court's subject-matter jurisdiction, the burden is on Kelly to allege facts sufficient to sustain such jurisdiction.  *Williams*, 320 F. Supp. 3d at 127.  But if the Department argues that Kelly failed to satisfy a non-statutory exhaustion requirement, the Department bears the burden of proof.  Given the complicated procedural history of this dispute, one or more

declarations clearly setting forth what occurred would greatly assist the Court.  For this reason and given the convoluted administrative record, if the Department decides to raise further exhaustion arguments, it should consider whether a motion for summary judgment fits the bill better than does a motion to dismiss.  Although non-jurisdictional administrative exhaustion arguments can—at times—be resolved on a motion-to-dismiss, *see Thompson v. DEA*, 492 F.3d 428, 438 (D.C. Cir. 2007), it can be "difficult for defendants to prevail" on exhaustion arguments "at this stage," rather than at summary judgment, unless the complaint or materials it incorporates make the plaintiff's failure to exhaust clear, *Huang v. Wheeler*, 215 F. Supp. 3d 100, 111 (D.D.C. 2016).

In any such motion, moreover, the Department should set forth the legal requirements for administrative exhaustion under the relevant statutes and regulations and, if it submits exhibits, point the Court specifically to where in such exhibits it believes the relevant evidence can be found.  Precise citations were few and far between in the Department's partial motion to dismiss, and the Department provided the Court a limited explanation of its nearly 800 pages of exhibits. The Department should also discuss the significance of the various administrative proceedings that have taken place with respect to a given claim, something it failed to do in its instant motion. *See supra* p. 9–11.

In short, whether the burden lies with the plaintiff (as a matter of jurisdiction) or the defendant (as an affirmative defense), the Court should not be required to sort through hundreds of pages of record materials with little or no assistance from the parties in organizing or understanding what happened over the course of many years before many different entities and decisionmakers—particularly where the Court cannot, on its own, discern whether any *other* proceedings or filings may have occurred.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Department's partial motion to dismiss, Dkt. 15, and **DISMISSES** claims D, E, G, H, I, K, M, P, S, and V without prejudice.[4]  To the extent consistent with this opinion, Kelly may file a second amended complaint within 45 days—on or before December 12, 2022.

For the benefit of the parties, the Court has attached an appendix to this opinion that lists each of Kelly's claims and their status in light of the Court's decision.

**SO ORDERED**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 26, 2022

---

[4] Kelly has filed a motion to compel a Rule 26(f) Conference, Dkt. 20, which the Department has opposed, Dkt. 22, as well as a motion for an Order compelling the Department to provide his time and attendance data, Dkt. 24, which the Department has also opposed, Dkt. 25.  Because Kelly's motions were premature and because the Court is providing Kelly an opportunity to file a second amended complaint, these motions are hereby **DENIED** as moot.  In response to Kelly's motion to compel a Rule 26(f) Conference, the Department moved to stay discovery pending resolution of the Department's motion to dismiss.  Dkt. 23.  It is hereby **ORDERED** that this motion is **GRANTED** and that discovery is stayed pending further order of the Court, which will follow Kelly's submission, if any, of a second amended complaint, and, assuming Kelly chooses to submit a second amended complaint, the resolution of any motion by the Department to dismiss the second amended complaint, the Department's answer to the second amended complaint, and a scheduling conference.

## APPENDIX I – STATUS OF CLAIMS

| | Claim | Status |
|---|---|---|
| **A.** | **A:** 09/18/14: Agency cancels Plaintiff's [reasonable accommodation] RA for Call Bridge Service continuing 19-months (hearing-loss)<br><br>**Q:** Did Agency err by not engaging Plaintiff (9/18/2014) prior to cancelling his RA for Call Bridge Service? | Combined with claim Q and not dismissed |
| **B.** | **B:** 12/09/14: Agency denies replacement of Plaintiff's RA for iPhone4 when it dies (hearing loss).<br><br>**C:** 01/04/14: Agency directs Plaintiff "try to fix" unsafe iPhone4 continuing 15-months (hearing-loss).<br><br>**R:** Did Agency err by not replacing Plaintiff's dead, unsafe iPhone 4 when first reported (12/14/2014) and then requiring him to work with NTIA Help Desk to "repair" the iPhone 4? (i.e. the battery was dead.). | Combined with claims C and R and not dismissed |
| **C.** | Combined with claim B | |
| **D.** | **D:** 08/14/15: Agency orders Plaintiff withdraw from competition for GS-15 Supervisory Tenured position [sic].<br><br>**S:** Did Agency err, asking Plaintiff withdraw from competition for position now held Agency Supervisor? | Combined with claim S and dismissed without prejudice |
| **E.** | 10/01/15: Agency promotes GS-15 TERM CONDITIONAL employee to above Tenured position. | Dismissed without prejudice |
| **F.** | **F:** 10/06/15: Agency Supervisor states she will meet with [reasonable accommodation coordinator] RAC to update Plaintiff's RA-2014 Memorandum to permit full-time telework. Updated RA-2016-Memorandum never done.<br><br>**T:** Did Agency Supervisor err by not ever providing an RA 2016 Memorandum for Plaintiff? | Combined with claim T and not dismissed |
| **G.** | 11/24/15: Agency Supervisor on phone call to review FY-16 Performance Plan instead issues a "Letter of Caution" pointing to Plaintiff's immediate termination removal. | Dismissed without prejudice |
| **H.** | 01/27/16: False AWOL charges during Federal Shutdown while still under RA-2014 Memorandum. | Dismissed without prejudice |
| **I.** | **I:** 04/18/16: First of several Supervisor denials to Plaintiff work 1st shift (6am-230pm) for safe commuting.<br><br>**V:** The Agency discriminated against Plaintiff requiring medical document to approve 1st shift (6-230pm) to support safe commuting. At times when OS encouraged liberal commuting schedules (SAFE TRAC). | Combined with claim V and dismissed without prejudice |

| | | |
|---|---|---|
| **J.** | **J:** 05/19/16: Laptop (<=5lbs) Authorized by Office of the Secretary. Ordered on 5/24/2016. Unilaterally cancelled by Agency Supervisor on or about 6/6/2016.<br><br>**U:** The Agency failed to ever provide the RA for a working lightweight laptop ( <=5lbs) after being authorized by Office of the Secretary on 5/19/2021.Supervisor cancelled RA without informing Plaintiff | Combined with claim U and not dismissed |
| **K.** | 12/09/16: False AWOL charges made after sick-leave approved for 48 of 56 hours for 11/28-12/6/16. | Dismissed without prejudice |
| **L.** | 02/27/17: Plaintiff filed with EEOC on 12/23/2016, in retaliation 7-weeks later, Agency Supervisor issued a Proposal to Remove Plaintiff. | Not dismissed |
| **M.** | 03/17 /17: False AWOL charge based on Agency Supervisor's error RE: disabled-veteran LWOP use | Dismissed without prejudice |
| **N.** | 04/14/17: Plaintiff was terminated via Email while on approved sick leave. | Not dismissed |
| **O.** | Agency Supervisor ignored all of Plaintiff's approved leave (including 818 hours of sick leave following a MVA in 2015) when retaliating against Plaintiff with her  Proposal to Remove on (2/27/2017). Many of the above leave hours, almost 5 work months, correspond and invalidate many of the MISCONDUCT charge dates in Agency's Proposal to Remove. The Agency's Letter of Termination of 4/14/2017 draws from the above misconception of all the false charges made. | Not dismissed |
| **P.** | Did Agency Supervisor and Manager err by not engaging Plaintiff in dialog prior to issuing AWOL charges on: 2/5/2016 (20 hours); 12/9/2016 (40 hours) and on 3/23/2017 (8 hours)? | Dismissed without prejudice |
| **Q.** | Combined with claim A | |
| **R.** | Combined with claims B and C | |
| **S.** | Combined with claim D | |
| **T.** | Combined with claim F | |
| **U.** | Combined with claim J | |
| **V.** | Combined with claim I | |
| **W.** | Upon receiving "right to sue" from Agency, Plaintiff filed his case with EEOC on 12/23/2016. After learning of this, Agency Supervisor retaliated with a Proposal to Remove including over 150 false specification charges. | Not dismissed |